NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MERCHANTS INSURANCE CO. OF NEW HAMPSHIRE, INC. | : : : : |
| Plaintiff, | : : |
| v. | : : |
| 3 R PAINTING & CONTRACTING CO., INC.; SMITH GATTA GELOK INC.; 3 R PAINTING INC. (a fictitious corporation); HESSERT CONSTRUCTION NEW JERSEY, LLC; DAVID R. JOHNSTON and NOEMY JOHNSTON, | : : : : : : : : |
| Defendants. | : : |

Civil No. 06-1602 (AET)

**MEMORANDUM & ORDER**

THOMPSON, U.S.D.J.

This matter comes before the Court upon the motions for summary judgment by Defendant Hessert Construction New Jersey, LLC ("Hessert") and Defendant 3 R Painting & Contracting Co., Inc. (collectively, "Defendants").[1] The Court has decided these motions after reviewing the submissions of the parties and without oral argument, pursuant to Fed. R. Civ. P. 78. For the following reasons, both motions for summary judgment are denied.

BACKGROUND

This case arises from a dispute regarding insurance coverage. The Court incorporates herein the recitation of the facts in its Order, entered March 29, 2007, denying Defendant Smith Gatta Gelok Inc.'s Motion to Dismiss. The Court supplements that recitation with additional

---

[1]  Defendant 3 R Painting & Contracting Co., Inc. has titled its motion as a "Cross-Motion for Summary Judgment." In reality, 3 R Painting & Contracting Co. Inc.'s motion is a separate motion that simply joins Hessert's motion for summary judgment.

facts only as they are relevant to the disposition of the instant motions.

On July 18, 2004, Defendant David R. Johnston was working as a painter for Defendant 3 R Painting & Contracting Co., Inc. ("3 R Painting & Contracting")[2] at the Witherspoon School in Princeton, New Jersey, when he fell from some scaffolding and suffered serious injury. 3 R Painting & Contracting was the subcontractor on the project, and Hessert was the general contractor.[3] On September 7, 2005, Johnston and his wife, Noemy, filed a complaint in the Superior Court of New Jersey, Law Division, Mercer County, seeking damages for his injuries.

3 R Painting & Contracting was required by the subcontract with Hessert to obtain liability insurance naming itself and Hessert as insured parties. Initially, 3 R Painting & Contracting obtained liability insurance through Nautilus Insurance Company for a policy beginning August 9, 2003, and ending August 9, 2004. Before the expiration of the Nautilus policy, however, on March 18, 2004, Ralph Fusco, 3 R Painting & Contracting's executive officer, applied for liability insurance from Plaintiff Merchants Insurance Co. of New Hampshire, Inc., on behalf of an entity named "3 R Painting" ("Plaintiff's policy"). Plaintiff's policy was to be effective for an initial period from March 19, 2004, through March 19, 2005, and for a renewal period for another year. Thus, 3 R Painting & Contracting cancelled the Nautilus policy effective March 18, 2004, and also included Hessert as an additional insured on Plaintiff's policy.

---

[2]  The parties dispute the actual name of this Defendant. Defendants argue that "3 R Painting & Contracting Co., Inc.," "3 R Painting," and "3 R Painting Inc." all refer to the same entity. Plaintiff disagrees that the names are interchangeable, and contends that this Defendant has misrepresented its true name. The Court will refer to the entity as "3 R Painting & Contracting," for the sake of convenience and for the purposes of the instant motions only.

[3]  In light of the dispute regarding the accurate name of the subcontractor, it should be noted that the subcontract was between "Hessert Construction New Jersey, LLC" and "3 R Painting." (Def. Hessert's Br. Ex. A.)

On November 22, 2005, Plaintiff received notice of Johnston's suit and Hessert's request for defense and indemnification pursuant to Plaintiff's policy.  Plaintiff then notified Defendants that it was investigating the matter subject to a reservation of rights due to alleged misrepresentations by 3 R Painting & Contracting.  For instance, Plaintiff claims that the application for insurance stated that "3 R Painting" was a new venture when, allegedly, "3 R Painting" never actually existed as a separate entity, and Fusco actually sought a policy for 3 R Painting & Contracting, which had been in existence since 1986.  (Compl. ¶ 45.)  To the extent the application was submitted on behalf of 3 R Painting & Contracting, Plaintiff also alleges that the application contained further misrepresentations that: (1) 3 R Painting & Contracting had no previous insurance when in fact it did; (2) that 3 R Painting & Contracting had not cancelled any prior insurance when in fact it had; (3) that 3 R Painting & Contracting had five full time employees when in fact it had over fifteen; and (4) that 3 R Painting & Contracting did not regularly expose its workers to height-related risks when in fact it did.  (Compl. ¶¶ 46-49.)

On April 4, 2006, Plaintiff repudiated the existence of the policy, and advised Defendants that coverage was unavailable.  Plaintiff filed the Complaint in this action on the same day seeking, inter alia, rescission or reformation of the initial policy and the renewal policy, or denial of coverage.  Defendants' motions for summary judgment followed.  First, they argue that 3 R Painting & Contracting made no misrepresentations in obtaining coverage from Plaintiff.  Alternatively, they argue that if 3 R Painting & Contracting did make any misrepresentations, they were not material, and/or Plaintiff is estopped from rescinding coverage because it failed to void the policy after it learned of the misrepresentations.  Thus, they maintain that Plaintiff owes them primary coverage, as well as defenses and indemnity in the Johnston suit, and reimbursement for costs and fees incurred.

DISCUSSION

A.   Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999). The moving party may cite to the pleadings, depositions, answers to interrogatories, or admissions on file, to demonstrate that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To survive a motion for summary judgment, the nonmoving party cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment." Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

B.   Misrepresentations and Waiver

Defendants argue that no material misrepresentations were made in obtaining Plaintiff's insurance policy, or, if any misrepresentations were made, Plaintiff is estopped from rescinding coverage because it knew of the misrepresentations, but still continued to collect premiums for the policy. Plaintiff contends that numerous material issues of fact preclude summary judgment on the existence of misrepresentations and Plaintiff's knowledge of those misrepresentations.

Under New Jersey law, "equitable fraud provides a basis for a party to rescind a contract."

First Am. Title Ins. Co. v. Lawson, 827 A.2d 230, 237 (N.J. 2003). In the insurance context,

> a representation by the insured, whether contained in the policy itself or in the application for insurance, will support the forfeiture of the insured's rights under the policy if it is untruthful, material to the particular risk assumed by the insurer, and actually and reasonably relied upon by the insurer in the issuance of the policy.

Id. When an insurer claims that the insured obtained the insurance contract by misrepresentation or fraud, the insurer may not, with knowledge of the alleged fraud, "undertake to perform the contract and then reverse its field, so to speak, and seek to terminate or rescind that contract." Merchants Indemnity Corp. v. Eggleston, 179 A.2d 505, 513 (N.J. 1962). If the insurer knows of the alleged fraud, and still undertakes to perform the contract, the insurer "waives" its right to rescind the policy.[4] Id. Waiver is "the intentional relinquishment of a known right." Knorr v. Smeal, 836 A.2d 794, 798 (N.J. 2003). "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference. The party waiving a known right must do so clearly, unequivocally, and decisively." Id. (citations omitted). Thus, the pertinent question is when the insurer became aware of the fraud or misrepresentation. "[I]f a carrier receives information suggesting fraud . . ., it must seek the facts with reasonable diligence, and having acquired them it must within a reasonable period decide whether to continue to perform. What is a reasonable time depends upon the circumstances." Eggleston, 179 A.2d at 514. Therefore, for the Court to grant these motions for summary judgment, Defendants must demonstrate that no genuine issues

---

[4] Hessert argues in its Reply that it relies not on the concept of "waiver," but on the related, but distinct, concept of "estoppel" "as explained in the seminal case of Merchants Indemnity Corp. of New York [v.] Eggleston." (Def. Hessert's Reply 2.) The portion of Eggleston that Hessert cites, however, explicitly describes the concept of waiver, not estoppel. Eggleston, 179 A.2d at 513 ("[W]e are not dealing with a lack of policy coverage, but rather with a claim of misrepresentation or fraud in the inception of the coverage, a subject as to which 'waiver,' rather than 'estoppel,' is the controlling doctrine.") (citation omitted). Just as waiver controlled in Eggleston, waiver controls here.

of material fact exist and that the Court must conclude as a matter of law that either: (1) contrary to Plaintiff's allegations, no misrepresentations were made; or (2) if misrepresentations were made as to any particular issue, Plaintiff knew of the misrepresentations and unequivocally continued performance pursuant to the policy, thereby waiving its right to rescission.

The first misrepresentation Plaintiff identifies is that the application for insurance stated that "3 R Painting Inc." was a new venture when, in fact, "3 R Painting Inc." did not exist and the applicant actually sought an insurance policy for "3 R Painting & Contracting Co., Inc.," which had been in existence since 1986. (Compl. ¶ 45.) Defendants argue that the representation that "3 R Painting Inc." was a new venture was not made by 3 R Painting & Contracting, but by Defendant Smith Gatta Gelok, Inc., Plaintiff's insurance agent who solicited and submitted the application, and that the representation was not signed or affirmed by 3 R Painting & Contracting. (See Def. Hessert's Br. 7 and Ex. D.) Although 3 R Painting & Contracting may not have signed or affirmed this representation, this does not answer whether 3 R Painting & Contracting supplied this faulty information to Smith Gatta Gelok, Inc. or adopted it, or whether Smith Gatta Gelok, Inc. was alone responsible for this alleged untruth. Thus, a genuine issue of material fact exists as to whether 3 R Painting & Contracting made this misrepresentation.

Even assuming a misrepresentation on the part of 3 R Painting & Contracting regarding its actual name and business history, genuine issues of material fact exist as to whether and when Plaintiff received sufficient information suggesting fraud. Specifically, Defendants claim that Plaintiff knew the intended insured was an established company because the telephone survey Plaintiff conducted with Ralph Fusco on April 27, 2004, indicated "twenty years in business." (See Def. Hessert's Br. 7-8 and Ex. E.) Plaintiff counters that because "3 R Painting Inc." was represented to be a new venture, it understood Fusco's answers to the business history questions

to pertain to Fusco himself and his other businesses, "and not to the corporate entity appearing on the application." (Pl.'s Opp'n 7.) Thus, a genuine issue of material fact exists as to whether, at that time, Plaintiff knew that "3 R Painting Inc." was actually "3 R Painting & Contracting Co., Inc.," and that it was an established, and not new, venture.

Defendants also claim that Plaintiff knew that 3 R Painting & Contracting operated under several similar names because Plaintiff received correspondence and documents denoting alternating names for the entity. (Def. Hessert's Br. 8.) While this might amount to "information suggesting fraud," the Court cannot conclude as a matter of law, and from this evidence alone, that Plaintiff actually sought and acquired the facts regarding the true name and form of 3 R Painting & Contracting and that Plaintiff, nonetheless, clearly and unequivocally decided within a reasonable period to continue to perform under the policy. See Knorr, 836 A.2d at 798; Eggleston, 179 A.2d at 514. Thus, genuine issues of material fact also preclude summary judgment on the issue of Plaintiff's waiver of its right to rescind due to this alleged misrepresentation.

As noted above, Plaintiff may seek to rescind the policy on the basis of any one particular misrepresentation by the insured that is "untruthful, material to the particular risk assumed by the insurer, and actually and reasonably relied upon by the insurer." Lawson, 827 A.2d at 237. Indeed, Defendants argue that a grant of complete summary judgment is warranted because all bases for "attempted denial of coverage" are "not cognizable under the facts." (Def. Hessert's Br. 7.) Because the Court finds that genuine issues of material fact exist as to 3 R Painting & Contracting's alleged misrepresentation of its formal name and business history, and as to Plaintiff's potential waiver of its right to rescind due to this misrepresentation, the Court need not consider Defendants' additional arguments as to the other alleged misrepresentations at this

juncture. Genuine issues of material fact as to at least one of the alleged misrepresentations that would support rescission are sufficient to preclude the complete grant of summary judgment that Defendants seek at this time. Should further discovery provide a basis, Defendants may renew their motion for summary judgment at a later date on one or more of the alleged misrepresentations.

C.      Defense and Indemnity

Hessert further argues that Plaintiff owes it primary defense and indemnity as an additional insured under the policy for the claims asserted by Johnston in the state court case. (Def. Hessert's Br. 12-13.) As determined above, however, genuine issues of material fact exist as to whether the policy purportedly obtained by 3 R Painting & Contracting is subject to rescission for any number of alleged misrepresentations. Thus, as the Court cannot yet determine whether Plaintiff owes 3 R Painting & Contracting coverage under the policy, a determination of whether Plaintiff owes Hessert a defense is similarly impossible at this stage. Thus, summary judgment is denied as to this issue as well.

CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 18th day of September, 2007,

ORDERED that Defendant Hessert Construction New Jersey, LLC's Motion for Summary Judgment [29] DENIED; and it is further

ORDERED that Defendant 3 R Painting & Contracting Co., Inc.'s Cross-Motion for Summary Judgment [42] is DENIED.

                                                       s/Anne E. Thompson
                                                       _____
                                                       ANNE E. THOMPSON, U.S.D.J.