UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MERCHANTS INSURANCE CO.
OF NEW HAMPSHIRE, INC.

    Plaintiff,

    v.

3 R PAINTING & CONTRACTING CO.,
INC.; SMITH GATTA GELOK INC., et al.

    Defendants.

Civil No. 06-1602 (AET)

**MEMORANDUM & ORDER**

<u>THOMPSON, District Judge</u>

    This matter is before the Court on the motion of Plaintiff Merchants Insurance Co. of New Hampshire, Inc. for judgment as a matter of law or, in the alternative, for a new trial. For the reasons stated below, Plaintiff's motion is denied.

**I.     Background**[1]

    Plaintiff brought this suit seeking rescission of an insurance policy it issued to Defendant 3R Painting, Inc., alleging that Defendant Fusco, as a principal of 3R Painting, Inc., made several material misrepresentations in the initial application for coverage, including that "3R Painting, Inc." did not even exist and that the actual insured was 3R Painting & Contracting, Co. Plaintiff brought its action after it received a notice of claim arising from an injury suffered by one of 3R Painting & Contracting's employees, David Johnston, while working on a job on which 3R Painting & Contracting was the sub-contractor and Defendant Hessert Construction was the

---

[1] The Court assumes familiarity with the evidence presented at trial.

1

general contractor. Johnston sued Hessert in state court, and Hessert, who was an additional insured under the policy as 3R Painting's general contractor, served the notice of claim on Merchants.

In addition to the equitable claim for rescission on the basis of equitable fraud, Plaintiff also asserted legal claims for breach of contract and negligence against Plaintiff's insurance agent, Defendant Smith Gatta Gelok ("SGG"), for its role in binding the policy.

The parties and the Court agreed that, pursuant to Fed. R. Civ. P. 39, Plaintiff's equitable claim would be tried to an advisory jury and then ultimately decided by the Court and that its legal claims against SGG would be submitted to a second jury for verdict. (Joint Final Pretrial Order 23.)[2] The advisory jury returned a verdict in favor of Defendants 3R Painting and Hessert Construction, finding that Plaintiff had waived its right to rescind the policy. The Court adopted that verdict in its findings of fact and conclusions of law under Rule 52(a), concluding that while Fusco had made material misrepresentations in his application, Merchants had waived its right to rescind the policy by failing to act for at least ten months after learning of, or receiving information highly suggestive of, Fusco's misrepresentations. (June 22, 2009 Verdict & Judgment.) The second jury then returned a verdict in favor of Defendant SGG on Plaintiff's breach of contract and negligence claims. The jury found (a) that SGG had breached its contract with Plaintiff but that Plaintiff's damages were not caused by SGG's breach and (b) that SGG

---

[2] Because Plaintiff's claims against SGG would be moot if the policy were rescinded, the legal claims for damages against the agent were only to be submitted to the second jury if the Court declined to rescind the policy. However, because the parties indicated that the evidence they would be presenting with respect to both the equitable claim and the legal claims would substantially overlap, the Court impaneled both the advisory and standard juries, and had the parties present their cases to both juries, at the same time in one trial.

had been negligent in handling the 3R Painting placement but that SGG was only 30% negligent as compared to Merchants itself, which was 70% negligent, yielding no recovery for Merchants under New Jersey law. (Verdict Form, Docket # 103.)[3]

Plaintiff has now moved for a judgment as a matter of law or, in the alternative, for a new trial on its claims against SGG for breach of contract and negligence.[4] Plaintiff argues that once the jury found that SGG breached the agency agreement by not correctly ascertaining that Fusco was attempting to secure coverage for 3R Painting & Contracting, Co., not a new entity called "3R Painting, Inc.," and by not passing that information on to Merchants, there was insufficient evidence from which the jury could reasonably find that SGG's breach did not cause Merchants' damages: If SGG had informed Merchants that the insured was in fact 3R Painting & Contracting, Merchants argues, it surely would have cancelled the policy within the 60 day period following the issuance of the policy, during which time, Merchants asserts, it had the option to cancel the policy under New Jersey law, or at least at any time before Johnston was injured. Having cancelled the policy as of right, or before the injury, Merchants never would have needed to litigate its claim for rescission. Therefore there was insufficient evidence from which the jury could reasonably find that SGG's breach did not cause Merchants' damage in the form of the litigation costs associated with seeking the rescission judgment against 3R Painting

---

[3] The Court notes that the verdict sheet submitted to the jury on these legal claims called on the jury to return only a general verdict on each element of each claim, and did not pose any questions regarding specific issues of fact. Therefore, any possible inconsistency between the jury's general verdict on the contract claim and the jury's verdict on the negligence claim is not a basis for a new trial under Fed. R. Civ. P. 49.

[4] As required, Plaintiff made its Rule 50(a) motion at the close of evidence and now renews its motion under Rule 50(b). (Tr. May 22, 2009 108:10-17.)

3

and Hessert. Similarly, Merchants argues that there is insufficient evidence in the record from which the jury could reasonably find that Merchants itself was 70% negligent in not cancelling the policy either within the 60 days or before the Johnston injury.[5]

**II.    Analysis**

    **A.    Form of Damages**

Before addressing Merchants' argument directly, the Court must clarify what Merchants' claimed damages are. In the pending motion, Merchants asserts that the damages SGG's breach and negligence caused are the costs of having to litigate the rescission claim instead of cancelling the policy within 60 days as allowed by statute, or at least before the Johnston injury. However, Merchants asserted this damages theory for the first time in its closing argument to the second jury. It does not appear in the Complaint, Merchants' briefing on SGG's motion for summary judgment, the final pre-trial order or Merchants' trial brief. Instead, until closing arguments, Merchants claimed that its damages were its exposure to liability in the underlying state tort action. (See Compl. ¶¶ 84, 90, 94; Joint Final Pre-Trial Order 11 ("Statement of Damages Claimed: ... Merchants seeks ... damages from SGG consisting of defense fees, costs and expenses to be incurred by Merchants in defending and indemnifying 3R Painting & Contracting and/or Hessert in the Underlying Action.").)[6] Further, the Court explicitly instructed the jury that Merchants' claimed damages were its exposure to liability in the underlying tort case and that

---

[5] Plaintiff gives its argument regarding the negligence claim only cursory treatment, relying on, and simply referencing, its arguments with respect to the breach of contract claim; therefore, the Court will do not much more.

[6] Even in its closing argument, Merchants did not settle on just the rescission litigation cost theory and presented both damages theories to the jury. (See Tr. May 22, 2009 160:15-24, 166:23-25.)

they need not assign a dollar amount because the underlying tort case was still pending.[7] Merchants did not object to this instruction, either at the charge conference or after the Court read the instructions to the jury, at which time the Court allowed the parties another opportunity to state any objections to the Court's jury instructions. Therefore, the Court will deny Merchants' motion because it hinges on this theory of damages.[8]

However, for sake of completeness, the Court will construe Merchants' motion as also arguing on the basis of the 'exposure to liability in the underlying state tort case' damages theory: once the jury found that SGG breached the agency agreement by not informing Merchants of the true corporate identity of the applicant, there was insufficient evidence from which the jury could reasonably find that SGG's breach did not cause Merchants' damages in the form of exposure to liability in the underlying tort action. Similarly, Merchants argues that there is insufficient evidence in the record from which the jury could reasonably find that Merchants itself was 70%

---

[7] See Tr. May 22, 2009 123-24 ("In this case you do not need to determine any kind of dollar amount for these damages because the exact amount of damages here will be determined by the liability Merchants may face in Mr. Johnston's separate suit. The question you must answer is whether Smith, Gatta, Gelok's breach, if you find there to be this breach, caused Merchants to be exposed to this liability in Mr. Johnston's suit, which it may fairly -- would have arisen naturally from Smith, Gatta, Gelok's breach of contract."); 125-26 ("It is Merchants' burden to prove by a preponderance of the evidence that Smith, Gatta, Gelok's negligence was a substantial cause of a loss to it and the loss we're talking about is ... exposure to liability in that other lawsuit -- obligation to carry the insured or the indemnity claim of Hessert, that's the loss that Merchants ... is contending it is now exposed to as a result of the negligence of Smith, Gatta, Gelok ....").

[8] The Court also notes that the New Jersey statute Merchants cites as providing it with a 60 day window within which to cancel a policy without resorting to litigating a rescission claim, N.J.S.A. § 17:29C-7, applies only to automobile insurance policies. See § 17:29C-6(A). Therefore, even if the Court considered this new damages theory, Merchants' only argument that it could have avoided litigating the rescission claim is that it may have cancelled the policy some time before the Johnston injury.

negligent in not avoiding exposure to liability in the underlying tort action.

>    **B.    Judgment as a Matter of Law**

A Court should grant a motion for a judgment as a matter of law under Rule 50 only where "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find [in favor of the nonmoving party]." Eshelman v. Agere Systems, Inc., 554 F.3d 426, 433 (3d Cir. 2009) (internal citations and quotations omitted). Such motions are granted "sparingly" and only "where the record is critically deficient of the minimum quantum of evidence in support of the verdict." Id. Merchants has not met this standard.

First, Merchants asserts a counter-factual: that it *would have* cancelled the policy had it known of Fusco's misrepresentations. Merchants points to the testimony of Jim Smith, the Merchants underwriter who initially handled the policy, who testified that the information SGG failed to pass on to Merchants certainly would have been material to Merchants' decision to issue the policy and not cancel it. But, as SGG argues in its opposition, the jury could have reasonably concluded that Merchants would not have cancelled the policy even if it had known of Fusco's misrepresentations. As the Court found in its findings of fact with respect to the rescission claim, Merchants chose not to rescind the policy even after it received the Supplemental Questionnaire and the Audit Report and learned of Fusco's misrepresentation regarding the number of employees – information highly suggestive of the insured's true identity. From that evidence, the jury could reasonably conclude that if Merchants chose not to rescind the policy when it actually learned of the misrepresentations in March 2005, Merchants would not have

cancelled the policy even if it had learned of them earlier on.[9] Therefore, the jury had sufficient evidence to find that Merchants would not have cancelled the policy even if SGG had not breached the agreement and therefore that SGG's breach did not cause Merchants' damages. Similarly, since there is sufficient evidence to find that Merchants may not have even cancelled the policy within the 60 days or before the Johnston injury even if given the information, the jury had sufficient evidence to conclude that Merchants itself was substantially more negligent than SGG in its handling of information regarding its insureds.[10]

Second, even assuming arguendo that the jury could not reasonably escape the conclusion that Merchants would have cancelled the policy within the 60 days or at least before the Johnston injury had SGG informed Merchants of the insured's true corporate identity, all that would establish is that there was insufficient evidence to find that SGG's breach was not a but for cause of Merchants' exposure to liability. However, the jury may still have reasonably concluded that Merchants itself, not SGG, *proximately* caused the damage by not rescinding the policy when it finally did learn of the misrepresentations from the Supplemental Questionnaire and the Audit Report. Under New Jersey law, a plaintiff must prove that defendant's breach of contract was both a but for cause as well as a proximate cause of the damages, that is, that defendant's breach

---

[9] As the Court noted in its findings of fact and conclusions of law, while the evidence only showed that after the Supplemental Questionnaire and the Audit Report, Merchants directly knew of the misrepresentation regarding the number of employees but not the other misrepresentations, Merchants still had information "highly suggestive" of the other misrepresentations but chose not to investigate them.

[10] Importantly, under the Court's reasoning here, even if the Court allowed Merchants to now claim that its damages were the costs of litigating the rescission claim, judgment as a matter of law would still be inappropriate: there was sufficient evidence for the jury to conclude that Merchants would not have cancelled the policy within the 60 day period or before the Johnston injury even if SGG had passed on the correct information.

was a "substantial factor" in causing the damages.  See Wade v. Kessler Inst., 778 A.2d 580, 589-90 (N.J. Super. Ct. App. Div. 2001).  Here, there was sufficient evidence in the record for the jury to find that Merchants later received from the Supplemental Questionnaire and the Audit Report the information SGG had earlier failed to provide, but then chose not to rescind the policy.  (See Verdict & Judgment 13-15.)  Therefore, there was sufficient evidence for the jury to reasonably conclude that Merchants' own failure to rescind was the substantial factor which caused its exposure to liability while SGG's breach was only a but for cause.  Similarly, again, there was likewise sufficient evidence for the jury to conclude that while SGG was negligent in its collection and communication of information, Merchants itself was substantially more negligent than SGG in its handling of information regarding its insureds.

      C.     New Trial

While a new trial may be granted even when judgment as a matter of law is inappropriate, it should be granted only when the verdict is contrary to the weight of the evidence or when a miscarriage of justice would result if the verdict were to stand.  Brennan v. Norton, 350 F.3d 399, 430 (3d Cir. 2003).  For the reasons stated above, the jury's verdict was neither against the weight of the evidence nor resulted in a miscarriage of justice.

## CONCLUSION

For the foregoing reasons,

IT IS on this 16th day of September, 2009,

ORDERED that Plaintiff's motion for judgment as a matter of law or for a new trial [docket # 120] is DENIED.

                                                                s/ Anne E. Thompson

                                                                ANNE E. THOMPSON, U.S.D.J.